UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CIV-60083-RAR

**WARREN DARLOW**,

    Plaintiff,

v.

**CITY OF CORAL SPRINGS**, *et al.*,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendants, City of Coral Springs and Frank Babinec's, Motion to Dismiss [ECF No. 4] ("Motion"). Having reviewed the Motion, Plaintiff's Response [ECF No. 10], and Defendants' Reply [ECF No. 15], it is hereby

**ORDERED AND ADJUDGED** that the Motion is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

## BACKGROUND

Plaintiff worked for the City of Coral Springs as a Humane Officer with "Animal Control duties." *See* Compl. [ECF No. 1-2] ¶¶ 9-10. Following the death of George Floyd in the early summer of 2020, Plaintiff posted a meme in a private Facebook group that depicted George Floyd with pink skin. *Id.* ¶ 12. Plaintiff alleges that he was "making a satirical comment on the current political climate due [to] George Floyd's death." *Id.* ¶ 13. According to the Complaint, someone hacked Plaintiff's friend's account and took a screenshot of the post, which was subsequently reported to "the Deputy Chief." *Id.* ¶¶ 14-17. On or about August 13, 2020, Plaintiff got called into the Deputy Chief's office, where the Deputy Chief told Plaintiff he was terminated because the Deputy Chief and city attorney were offended by the post. *Id.* ¶ 18.

Plaintiff then filed this case against Defendants City of Coral Springs and Frank Babinec, the City Manager, in the Circuit Court of the 17th Judicial Circuit in Broward County, Florida. *See* Compl. at 1. Plaintiff's Complaint pleads two counts under 42 U.S.C. § 1983—one against Babinec in his individual capacity and one against the City—for violations of Plaintiff's First Amendment rights. *Id.* at 5-8. Defendants removed the case to this Court on January 15, 2021. *See* Notice of Removal [ECF No. 1].

In their Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), Defendants argue that Plaintiff's speech did not touch on a matter of public concern and was therefore not protected under the First Amendment. *See* Mot. at 2. Defendants further contend that the City's interest in promoting efficiency of public services—which is furthered by terminating an employee who posts racially insensitive content—outweighs Plaintiff's interest in speaking. *Id.* Defendants also argue that Babinec is entitled to qualified immunity and that the City is immune from suit because the Complaint fails to demonstrate that the alleged violations resulted from a long-standing custom by the City of violating individuals' First Amendment rights. *Id.*

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court is required to accept as true all allegations contained in the complaint, courts "are not bound

to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quotation omitted); *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I. ***Whether Plaintiff's § 1983 claim against Babinec should be dismissed based on qualified immunity***

The Eleventh Circuit has explained that "[q]ualified immunity allows government employees to carry out their discretionary duties without fear of litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th Cir. 2007) (quotation omitted). Government employees are deemed to be acting within their discretionary authority if "objective circumstances show that the challenged actions occurred in the performance of the employee's duties and within the scope of this authority." *Id*. Courts apply a two-part inquiry to determine if a government employee is entitled to qualified immunity: "(1) do the alleged facts show that the government actor violated a constitutional right? and (2) was that constitutional right clearly established?" *Id*.

Thus, "the *threshold inquiry* for deciding if qualified immunity is appropriate is *determining under First Amendment, government-speech law whether there has been a constitutional violation by the government employer*." *Id*. (emphasis in original). Generally, a public employee may not be demoted or discharged in retaliation for speech protected by the First Amendment. *See Alves v. Bd. of Regents of the Univ. Sys. of Georgia*, 804 F.3d 1149, 1159 (11th Cir. 2015). However, government employees do not enjoy an absolute right to freedom of speech. The Supreme Court's First Amendment jurisprudence in the public employment context has aimed "to strike 'a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency

of the public services it performs through its employees." *Id.* (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)) (alteration omitted).

Consistent with this objective, the Supreme Court has set forth a two-step inquiry into whether the speech of a public employee is constitutionally protected. *Id.* First, a court must determine whether the public employee spoke as a citizen on a matter of public concern. *Id.* If the answer is no, the employee does not have a cause of action under the First Amendment. *Id.* If the answer is yes, then the court proceeds to balance public and private interests as articulated in *Pickering*. *Id.* at 1159-60. Specifically, the *Pickering* balancing test requires the court to weigh the employee's free speech interest against the interest of the government employer "in promoting the efficiency of the public services it performs." *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001). If the employee's interests outweigh those of the government employer, the court then considers whether the speech "played a substantial part in the government's decision to discharge the employee." *Id.* at 1122-23 (quotation omitted). If it did, the court then addresses a final prong: "whether the government has shown by a preponderance of the evidence that it would have discharged the employee regardless of the protected conduct." *Id.* at 1123.

Once the court has determined that the government employer has violated the employee's First Amendment rights under the *Pickering* balancing test, the court must analyze whether the constitutional right was *clearly established* such that the qualified immunity defense can be overcome. To determine whether the law clearly established the challenged conduct as a constitutional violation at the time the conduct took place, a court looks to whether the government official had "fair notice" that the conduct at issue violated a constitutional right. *See Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017). There are three methods to show the government official had fair warning:

> *First*, the plaintiffs may show that a materially similar case has already been decided. *Second*, the plaintiffs can point to a broader, clearly established principle that should control the novel facts of the situation. *Finally*, the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary. Under controlling law, the plaintiffs must carry their burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the [relevant State Supreme Court].

*Id.* (quoting *Terrell v. Smith*, 668 F.3d 1244, 1255–56 (11th Cir. 2012)).

The Eleventh Circuit has indicated that "[t]he law is clearly established that an employer may not demote or discharge a public employee for engaging in protected speech." *Boyce*, 510 F.3d at 1341. However, "[b]ecause no bright-line standard exists to put the employer on notice of a constitutional violation, this circuit has recognized that a public employer is entitled to immunity from suit unless the *Pickering* balance 'would lead to the inevitable conclusion that the discharge of the employee was unlawful.'" *Busby v. City of Orlando*, 931 F.2d 764, 774 (11th Cir. 1991) (quoting *Dartland v. Metro. Dade Cty.*, 866 F.2d 1321, 1323 (11th Cir. 1989)); *see also Camp v. Corr. Med. Servs., Inc.*, 400 F. App'x 519, 520-21 (11th Cir. 2010) ("[I]t is not enough to defeat a qualified immunity defense that under the facts of the case the *Pickering* balance tilts in favor of the plaintiff's free speech. Instead, the balance must tilt decidedly in favor of the plaintiff's speech in order for the defendants to have fair and clear notice that they were violating the plaintiff's constitutional rights.").

Here, the Court finds that Plaintiff has sufficiently pleaded that he spoke as a citizen and that his speech involved a matter of public concern. Deciding whether a public employee's speech relates to his or her job versus an issue of public concern "must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Boyce*, 510 F.3d at 1343. To involve a matter of public concern, a public employee's speech must "relate to any matter of

political, social, or other concern to the community." *Maggio v. Sipple*, 211 F.3d 1346, 1351-52 (11th Cir. 2000) (internal quotation marks and alteration omitted).

Importantly, "whether speech is shocking or inappropriate is irrelevant to whether it concerns a public matter." *Marquardt v. Carlton*, 971 F.3d 546 (6th Cir. 2020). For example, in *Marquardt*, the Sixth Circuit reversed a district court's finding that incendiary comments on Facebook regarding the police shooting of 12-year-old Tamir Rice did not involve a matter of public concern. *Id.* at 547. The court explained that the posts were written fourteen months after the fatal police shooting—which engendered widespread news coverage and "fierce public debate"—and not long after a grand jury declined to indict the officer who shot Rice. *Id.* at 549-50. The court also noted that the use of Facebook to communicate the speech "cuts in favor of deeming the speech as addressing a matter of public concern," even if the posts were only visible to the plaintiff's friends. *Id.* at 551 ("Keep in mind that the very genesis behind Facebook and other social media platforms is to allow the opportunity to share messages and opinions with wide audience."). The court thus concluded that despite the "shocking and no doubt painful" aspects of the Facebook posts, they related to a subject of general interest and concern to the public.

Similarly, in *Duke v. Hamil*, a court in the Northern District of Georgia found that a Facebook post with an image of the Confederate flag and the text "It's time for the second revolution" constituted speech on a matter of public concern. 997 F. Supp. 2d 1291, 1300 (N.D. Ga. 2014). The court explained that regardless of how controversial or unpopular the post may be, "a Confederate flag can communicate an array of messages, among them various political or historical points of view," and because the post appeared right after an election, "it is plausible the Plaintiff was expressing his dissatisfaction with Washington politicians." *Id.*

Here, Plaintiff alleges that he posted the George Floyd meme in a private Facebook group and there is no indication that the Facebook post identified him as a City employee, which supports

a finding that he was speaking as a private citizen outside of his job duties. *See id.* Plaintiff posted the meme against the backdrop of the police killing of George Floyd, which made national headlines and was followed by widespread protests and heated debate on race relations in the United States. And Plaintiff alleges that he was "making a satirical comment on the current political climate due to George Floyd's death." Compl. ¶ 13. Considering this context, the Court is hard-pressed to find that a post concerning George Floyd's death and the events that ensued does not touch on a subject of public concern. The Court therefore disagrees with Defendants that Plaintiff's Complaint must be dismissed on the grounds that it does not involve speech on a matter of public concern—the threshold inquiry in this type of First Amendment case.

However, as explained above, Plaintiff's showing that he spoke as a private citizen on a matter of public concern only creates the *possibility* of a First Amendment claim. The Court must then balance Plaintiff's interest in speaking against the government's countervailing interest in the efficiency of the public services it performs. Factors relevant to this inquiry include whether the speech:

> (1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the institution; (6) undermined the mission of the institution; (7) was communicated to the public or to coworkers in private; (8) conflicted with the responsibilities of the employee within the institution; and (9) abused the authority and public accountability that the employee's role entailed.

*McCullars v. Maloy*, 369 F. Supp. 3d 1230, 1239 (M.D. Fla. 2019).

Although there are circumstances where it is possible for the Court to perform this balancing based solely on the pleadings—such as where the Complaint alleges facts that clearly show the employer's justification outweighs the plaintiff's interest or that the employer's justification is frivolous—this is not one of those cases. Here, the facts alleged in the Complaint

Page 7 of 11

that bear on the *Pickering* balancing inquiry are sparse.  Plaintiff merely alleges that he was terminated because the Deputy Chief and the city attorney were offended by his post.  *See* Compl. ¶ 18.  Defendants' justifications cannot be gleaned from the Complaint—nor does the Court have sufficient facts to make findings regarding the potential disruptiveness and impact of Plaintiff's speech on the operation of Plaintiff's department, working relationships, and performance of his duties and responsibilities.

Given that the Court is unable to assess the weight of Defendants' side of the *Pickering* balancing test, the Court finds it advisable to defer the *Pickering* inquiry to the summary judgment phase of the proceedings.  *See Grainger v. Worley*, No. 04-00041, 2005 WL 8175765, at *10-11 (M.D. Ala. Jan. 7, 2005) (deferring ruling on *Pickering* balance to summary judgment because complaint did not provide "factual predicate needed to weigh Plaintiff's interests against Defendant's" and noting that "several courts have discussed the difficulties in successfully applying *Pickering* at the motion to dismiss stage, recognizing that often the *Pickering* balancing is only possible at the summary judgment stage after some discovery has been conducted.").  Further, a determination of whether qualified immunity applies in this case—which turns on whether the *Pickering* balance tilts *decidedly* in Plaintiff's favor—is also better-suited for summary judgment.  *See Devlin v. Kalm*, 531 F. App'x 697, 707 (6th Cir. 2013) ("In the typical case, a complaint will not provide the court with enough detail and context to permit a legal conclusion that an employer violated an employee's clearly established rights under *Pickering*.").

Accordingly, Defendants' motion to dismiss Count I of the Complaint against Babinec is denied.[1]

---

[1] The Court notes, however, that "[i]t is particularly difficult to overcome the qualified immunity defense in the First Amendment context."  *Gaines*, 871 F.3d at 1210.  Because case law on the First Amendment has not staked out a bright line rule and relies on a fact and context-specific balancing test, a defendant in a First Amendment action will only rarely be on notice that his or her actions are unlawful.  *Id.*

## II. *Whether Plaintiff sufficiently pleaded a § 1983 claim against the City*

Separate from the elements of a First Amendment retaliation claim, to establish municipal liability under § 1983, a plaintiff must show that execution of the municipality's policy or custom caused the alleged injury. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694-95 (1978); *see also Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991) ("It is well established that a municipality may be held liable under § 1983 only when the deprivation at issue was undertaken pursuant to city 'custom' or 'policy,' and not simply on the basis of *respondeat superior*.").

In *Pembaur v. City of Cincinnati*, the Supreme Court articulated the following three-part test for determining when a single act of a municipal officer subjects the municipality to liability under § 1983: "(1) acts which the municipality officially sanctioned or ordered; (2) acts of municipal officers with final policy-making authority as defined by state law; and (3) actions taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area." *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 637 (11th Cir. 1991) (citing *Pembaur v. City of Cincinn*ati, 475 U.S. 469, 480-83 & n.12 (1986)). The Court made clear that "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 481-82. Rather, "municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481.

Here, to support municipal liability, Plaintiff alleges that the City "has a custom and policy that permitted and directed the termination of Plaintiff." Compl. ¶ 35. Plaintiff also avers that "Defendant City Manager is the final decision maker and has full authority to make policy and procedure and take final acts on employment decision[s], including firing and hiring, as he did

here," and that the City "through his final decision maker, directly, and under the color of law, not only directed, approved, ratified, but ordered the unlawful and deliberate termination of Plaintiff." *Id.* ¶¶ 35-36. These allegations are wholly conclusory and therefore insufficient to withstand dismissal of Count II against the City. *See McCants v. City of Mobile*, 752 F. App'x 744, 748 (11th Cir. 2018) (affirming dismissal of claims against city because plaintiffs "fail to support their municipal liability claims with anything other than 'a formulaic recitation of the elements of the cause of action.'") (quoting *Iqbal*, 556 U.S. at 678); *AHE Realty Assoc., LLC v. Miami-Dade Cty., Fla.*, 320 F. Supp. 3d 1322, 1339 (S.D. Fla. 2018) (dismissing § 1983 claim against county where Plaintiff merely made conclusory allegations that public official was a final decision maker and did not cite any state or local statute or ordinance supporting that allegation); *Coakley v. City of Hollywood*, No. 19-62328, 2021 WL 2018914, at *3 (S.D. Fla. Jan. 15, 2021), report and recommendation adopted, No. 19-62328, 2021 WL 2012360 (S.D. Fla. May 20, 2021) (finding Plaintiff's allegations insufficient to satisfy *Monell* in light of the *Iqbal/Twombly* pleading requirements because the complaint "fails to identify any formal policy or to include any non-conclusory allegations regarding any unofficial policy or custom that may be at issue.").

Accordingly, Defendants' motion to dismiss Count II of the Complaint against the City is granted.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss [ECF No. 4] is **GRANTED IN PART AND DENIED IN PART**.

2. Count II of the Complaint is **DISMISSED without prejudice**.

3. Plaintiff shall file an Amended Complaint in conformance with this Order on or before **August 16, 2021**.

4.      Given the forthcoming Amended Complaint, the Court will *sua sponte* extend the parties' deadline to file dispositive motions to **September 3, 2021**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 9th day of August, 2021.

_____
**RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE**